23-1139 Mark Kim Gaskill, et al. Petitioners v. Securities and Exchange Commission Mr. Bassett for the Petitioners Mr. Alvarez for the Respondents Good morning, counsel. Mr. Bassett, please proceed when you're ready. Good morning, your honors. Michael Bassett on behalf of the Petitioners in this case. There are three major issues here today. First, the pending motion to dismiss for Petitioner Mr. Gaskill. The pending motion to supplement the record with the additional denial of forum letter submitted by FINRA on remand. And then, of course, the merits as to each of the petitioners here. So I'd like to first start with the jurisdictional aspect on the motion to dismiss. Of course, the Exchange Act provides jurisdiction when there is a final order from the SEC. Under the Bennett test, Bennett v. Speer, the elements of a final order require that there must be a consummation of the agency's decision-making process and one by which rights or obligations have been determined or legal consequences will flow. This test, the courts have held that it should be construed in a flexible, pragmatic manner. And here, generally remand orders are not final orders unless that lack of finality is eventually resolved. So in this matter, Mr. Gaskill, his portion of the appeal to the SEC was as to who issued the denial of forum matter. FINRA rule 13-203 requires that the director of FINRA is the person to deny forum, and there was no evidence in the record as to whether it was the director or someone else. So the SEC remanded for the sole purpose of that determination. Mr. Gaskill, can I ask you about the equitable claims and whether they've been forfeited? Sure, yes. Yeah. So when I read Rule 2080B, it's not clear to me that there are only three grounds for expungement, but it does seem to be the case that the SEC and FINRA have said in various places for a long time that there are only three grounds for expungement. So given that context, would a party that is saying there are additional grounds for expungement have to make that quite clear, both before FINRA and then before the SEC? And have the petitioners here done that? Sure. So it's our position that it does not necessarily need to be outlined as to what expungement. It's been widely held that expungement is, in fact, an equitable remedy. FINRA Rule 2080 does not, if you look at the language itself, does not outline or state anywhere that you must submit these three, which is A, B, and C, false, clearly erroneous, factually impossible. I don't necessarily disagree with that, but that does seem to be the agency's interpretation of how that rule works, as if there are three exclusive grounds for expungement. Right. I mean, I agree that may not be the most natural reading of that rule, but it seems to be the reading that the agency has provided. Well, I think it's telling that first, again, it's not specifically outlined in that rule, and that arbitration forums are specifically for equitable remedies. There are no pleading requirements other than to state sufficient facts in a statement of claims submitted before FINRA. So there are not elements that must be met in a pleading like in a state court proceeding. So I think it would be unfair for the petitioners to be held to a higher standard, specifically seeking expungement under an equitable remedy when an equitable remedy is necessarily the part and parcel of the claim that they're seeking. Additionally, it's our position that although not explicitly stated in the statement of claim to FINRA that they were seeking equitable expungement, again, that is what they were seeking, but they did mention specific allegations that the public disclosure of the patently false allegations here and does offer any public protection and has no regulatory value, that if not expunged, customer dispute disclosures will mislead any person viewing the claimant's central registration depository record and will not provide valuable information for decision making, and also asked in the relief section for any other further relief that the arbitrator deems just and equitable. If you put aside the kind of boilerplate language in the last part of it, it seemed like the rest of the items that you read, they were just adjuncts to the argument that there's false statements. Well, it really seems like those were just bound up in the claim that under the explicit items that are set out in rule 2080 about falsity. Right, and again, it's our position that you don't necessarily need to put in the state in the claim that I am seeking expungement based on equitable principles, that the nature of an expungement claim itself is seeking expungement based on equitable principles, because there's necessarily a weighing of the equities when an arbitrator or judge or anyone determines whether expungement is warranted in a particular circumstance. And here, the petitioners did state under the ABC the false clearly erroneous standards, but they're also stating here in that language I just described that it's a totality of the circumstances argument here, that they're saying regardless of whether it's false, this will mislead people in viewing their public disclosure on the broker check record, and because of that, they're asking for expungement. Yeah, in considering whether this is a new rule that FINRA made that would have to have approval by the SEC, I'm wondering if you can help me understand what precisely petitioners think is the new policy or interpretation, right? Is it about the authority of the FINRA director to withhold arbitration in this particular context, or is the new policy or interpretation something about whether collateral attacks are allowed in a FINRA arbitration? What precisely is the new policy or interpretation? So if I understand the question correctly, is it the fact that the director of FINRA is essentially issuing a blanket rule bypassing the rulemaking procedure? Is that the question? Well, that's one of your arguments, but I'm wondering what precisely is the new policy or interpretation that you think would require SEC approval? So here, the director of FINRA is essentially instituting a blanket policy that says anyone seeking expungement of a disclosure that previously resulted in a prior adverse award is ineligible from seeking expungement in this forum. That is not listed anywhere in the rules, and this is a blanket rule that is not contemplated by the plain rules of the Exchange Act. Seems very specific though. And it is, and I think part of that argument is that the SEC declared that the director was making a case-by-case determination for each of these occurrences. However, I cited to an occurrence where a prior petitioner was able to seek expungement based on a prior adverse award. So this isn't a case-by-case, or excuse me, it's not, I apologize if I missed my point there, but essentially what the SEC is arguing is that the director made a case-by-case determination, but there's no facts in the record to support any analysis or case-by-case determination here. It's just the fact that they were, that the prior... The more specific idea was that these were impermissible collateral attacks. So is it your position that the FINRA arbitral rules or the FINRA rules generally do not say anything about collateral attacks? Because they do suggest, there are rules that suggest these arbitrations are final. So maybe it's fairly implied from that, that you can't make a collateral attack. Are you suggesting that that is a new interpretation, the bar on collateral attacks of FINRA arbitrations or arbitral awards? Well, I do think that the SEC placed upon the director of FINRA's determination, this collateral attack piece, nowhere in the denial of forum letters issued by FINRA does it state that this was a collateral attack on these awards. They just state you're ineligible because of this prior award. But as outlined in our brief, it's our position that this is not a collateral attack on the award. The relief requested by each of these petitioners is removal of the information from the public database that describes this award broker check and or the CRD that populates the information there. It's not seeking to vacate the award. It's not seeking to reclaim any of the damages that were awarded in the underlying arbitration. It's not seeking to affect that original arbitration award in any capacity other than to remove the public disclosure of it in this database. I've got a question. I want to ask you about the lead plaintiff, Mark Gaskell. And I think I heard you say that it was remanded simply for the director to make the decision. But if you look at footnote 32 of the commission order, it says because we are remanding to FINRA, the proceedings of Gaskell so forth, we reserve the question of whether the same analysis, that is the non-FINRA arbitration that this arbitration service of Portland performed for on remand, the director should consider that question in the first instance. Now, that April 25th letter doesn't explicitly say, oh, by the way, the fact that Gaskell came from Portland doesn't change the analysis. If we decide that we don't have jurisdiction over Mr. Gaskell, what's your position on whether we should remand to let FINRA answer the question that the commission told it to answer in the first place? So, if jurisdiction is not found, then we would request that it be remanded. And I think that would be the appropriate solution here rather than dismissal of the petitioner's entirely. But to remand to address that specific issue, I don't think that, I mean, the SEC makes pretty clear in its decision what the effect of its order is really stating. I'm not sure what the difference between a final arbitration award in one forum versus a final arbitration in another forum would have any impact on the analysis here. But the SEC does make that statement as a footnote in their order. It must feel there is some room there to have a different analysis. I think, or they wouldn't have said, we're not going to reach that issue because it didn't come from FINRA. Right. And on remand, FINRA did issue a new order, a denial of forum order. And again, they did not specify any further distinction between Mr. Gaskell's arbitration award issued in the Portland Forum versus FINRA. They again stated that this is a collateral attack on a prior adverse award and therefore he is ineligible from seeking expungement in that forum. Thank you. Thank you, counsel. We'll give you a little time for rebuttal. Thank you. Mr. Alvarez? Good morning, Your Honors, and may it please the Court, Paul Alvarez for the Securities and Exchange Commission. Your Honors, as the Commission's brief makes clear, this Court lacks jurisdiction to consider the petition for review by Mr. Gaskell because there was no final order disposing of his application. The Commission did not conduct a 19-F analysis that it did in disposing of the remaining petitioners who were properly before this Court, and as counsel acknowledged, the Commission remanded Mr. Gaskell's application to FINRA. Because there is no final order as to Mr. Gaskell's application, because this Court sits in review only of final orders of the Commission, this Court lacks jurisdiction to consider his petition for review, and therefore it must be dismissed. And on that point, you asked about remand, Your Honor. I don't think that this Court has anything to remand because the petition is not properly before this Court, so I believe dismissal would be the appropriate remedy here and not remand. Well, we're reviewing, you may be right, we're reviewing the Commission order, and that order, as I read it anyway, said to FINRA, not only does the Director have to make this decision, but there may be a different analysis because it comes from a non-FINRA arbitration. Yes, that's right, and so I think what the issue here is, Mr. Gaskell's case is presently effectively still before FINRA because he hasn't presented, he hasn't submitted an application to the Commission for review of FINRA's order. Now of FINRA, of the Director's decision to deny access, now in that petition, you know, I don't want to speak for what they can argue, but they certainly could argue, well, FINRA's Director didn't make that determination, we would like for FINRA to make that determination, or they could request that FINRA, the Director make that determination in the first instance. Is he not out of time? I don't think he's out of time for seeking Commission review of FINRA's. Of the April 25th. Of the April 25th, he may be, I don't know that necessarily. I think he might still be, he hasn't, the point is he hasn't brought this to the Commission's attention, so there's really no analysis that the Commission has done on that issue, and because of that, there's nothing for this Court to consider because his case effectively is still in front of FINRA because he hasn't brought it to the Commission's attention in the first instance. I recognize it's a weird situation, but that is kind of where we're at. I mean, I guess he could have sought review in that proceeding as a protective matter, even if he thought that there was, if he thought there was jurisdiction here, he could cover himself by seeking review through the other channel. Absolutely, I think that's what he should have done, right? I mean, he should have sought the Commission's review of the April 25th order immediately, and because he still had the 60 April Commission order, so that would give him to about June. And I don't know, I couldn't tell you whether the Commission would have resolved the issue in that time frame, but at least he could have made the attempt to do so and attempt to kind of then join the petitioners here with the final Commission order and perhaps bring the Commission's order resolving his April 25th letter in as a related case or combine the two, but he never did that. So, we are I don't want to get into the wild blue yonder, but you are an expert. Can you think of why the fact that the arbitration took place in a non-FINRA site make any difference? These arbitration services, Portland and these others, do they have something different from FINRA, or do you know? I don't know, Your Honor. I think it was merely, and again, I don't want to speculate here as to what the Commission was thinking, but if I were to guess, it looks like in certain instances, you have arbitrators that are actually FINRA arbitration, and Mr. Gaskill's was years ago. I don't know whether it was before the NASD or before FINRA. I don't know exactly, so I just I hesitate to say. I'm sorry. I wish I had a better understanding of what the Commission Portland. Yes. Yeah. Right. The state versus say, you know, this is an arbitrator that is under the auspices of FINRA. So, but so we believe that the petition should be dismissed in turning to the Commission order as to the remaining petitioners who are properly before this court. The Commission acted reasonably in concluding that the Director of Dispute Resolution Services at FINRA didn't acted consistent with FINRA's rules and with the Exchange Act in denying the yes, you hear are the decisions here that were made at a FINRA director. Are they a kind of new interpretation or policy that would require SEC approval? No, I know not at all, both with respect to the type of authority that the director can exercise as well as to whether you can bring collateral attacks in the FINRA arbitral. Sure. So I think these are not, this is not a new rule. I know they've, my friend on the other side has claimed that it is, but the rules that, you know, as you alluded to in your questions earlier on, the rules well established that there are no collateral attacks. And I point this court to rule 12904B and 13904B, which states that all awards are final and shall not be subject to further review or appeal. And that establishes that collateral attacks on awards are not permissible. And I don't even take my friend to be arguing that collateral attacks could occur, that he could, that petitioners could challenge the merits of the underlying original adverse arbitration awards against them. So finality, I mean, in the federal court context, you know, the finality requirement implies some kind of limit on collateral attack. Yes. But there are exceptions to that. And so there's nothing specified in the FINRA rules about collateral attacks or perhaps situations in which something that looks like a collateral attack might be brought. No, there's nothing specifically saying there aren't, you're not allowed to collaterally attack, but I think fairly interpreted, each of the rules do prevent such attacks. I think you again look to 13904B, 8312C of FINRA's rules states that where there is customer dispute information that gives rise to a final award, that information shall be made permanently available on broker check and in the CRD. And do you think that's reasonably and fairly implied by existing rules? Yes, absolutely. I think also, you know, with respect to the director's authority, that's also a long standing rule that permits the director to engage in a gatekeeping function to ensure that, you know, FINRA is utilizing its limited resources in a way that would make the arbitration forum most efficacious and most efficient. And preventing collateral attacks on awards that are meant to be final is a reasonable exercise of that authority. I think the other thing that you need to keep in mind, Your Honor, is that in addition to FINRA, which place an of arbitration awards. And I point this court to 9 U.S.C. Sections 10 and 11, which provide the grounds for when an arbitration award can be vacated or modified. And the vacater section is Section 10. And in the vacater award, they allow vacater the award where the award was procured by corruption, fraud, or undue means, or where the arbitrators were corrupt, evidently arbitration awards in Section 11 may be made only where there has been a Scrivener's error or where there is some other error that has not affected the underlying merits that does not go to the underlying merits of the award. So that those two provisions express Congress's, you know, policy and interest in ensuring finality. Are you suggesting that that goes to the reasonableness of what the SEC did because it's consistent with Arbitration Act? I'm saying that that shows that the SEC acted reasonably in interpreting the rules as they existed and in interpreting the framework that Congress set up for the review of arbitration awards. And that that emphasis on finality makes clear that collateral attacks, even though there's not an express rule that says, well, you can't have collateral attacks, fairly interpreted the rules that FINRA has established in the rules that Congress has set up regarding the review of arbitration awards, clearly shows that collateral attacks are not permissible. And again, I don't take the petitioners to be arguing that they could collaterally attack, but their argument instead is that they're not collaterally attacking the awards because they're instead only seeking to expunge the allegations that gave rise to those awards. But there's a number of problems with that argument. And I can see I have 15 seconds left, if I may, you know, the problems with their arguments are threefold. The first is that argument ignores the fundamental fact that the original arbitration panels in this case found each of the petitioners liable. And that finding of liability is critical here because the grounds for seeking expungement go to, as Judge Srinivasan stated, they go to the issue of whether the allegations and Rule 2080, Rule 2080 states allegations, claims, or information was clearly erroneous, factually impossible, or false, or that the associated person wasn't involved in the awards necessarily made the determinations that the allegations were not clearly erroneous, were not false, were not factually impossible, and that the associated persons, the petitioners, were involved because they would have to make those determinations, if not explicitly, certainly implicitly in reaching a finding of liability. The second problem for the petitioners in their arguments that they're only seeking to expunge the allegations against them is that they are actually, they are actually collaterally attacking the underlying awards, not just by seeking the expungement of the information, but by challenging the awards themselves. I'd like to point this report to footnote nine of the commission's brief, which begins on page 32 of the brief. And in that footnote, the commission details the expungement request that the petitioners actually made to FINRA. And in those requests, the petitioners argue that they were entitled to expungement because contrary to what the original arbitration panels found, they did not act negligently, they did not make misrepresentations, they did not provide false or misleading information, they did not act fraudulently, they did not engage in churning, they had no fraudulent intent, they did not make unsuitable recommendations, and they did not violate the federal securities laws. Each of those challenges goes directly to the underlying legal determinations and findings of liability made by the original arbitration panels. And thus, those arguments constitute impermissible collateral attacks. What's your third one? The third one is simply just as a practical matter, what the petitioners are arguing for is an unfettered access, even decades after the fact, to the arbitration forum that they could argue on any argument outside of 2080B1, which we think is very clear that those are the only three categories for expungement, that they can make any argument at any time, even if there was a finding of liability. So as a practical matter, that standard that they're proposing is directly contrary to FINRA's interest in maintaining the finality of arbitration awards and ensuring that FINRA's resources are well spent and used on arbitrations that are properly before the arbitration forum. Unless this court has any further questions. I do have one more question, and it's a footnote again. Tell me what role the court that has to can second guess the award of expungement? Well, so I think the court has to sit in review as courts would. I don't think it's a rubber stamp necessarily, but the way that it... It says the award must be confirmed. Yes, that's right. So I'll try and be very brief because prior to this requirement being implemented into the rules, arbitrators had themselves been able to just expunge records without resort to a court. And NASD and now FINRA created this requirement to provide an extra check and to allow themselves to oppose. And the categories in B1, FINRA said as the commission order approving NASD rule 2130, which became 2080, NASD and FINRA said that they would not oppose expungement where the three categories in B1 were met, but that they would continue to oppose expungement requests to the extent the arbitration panel made findings outside of those three. And so that's where that comes into play. Thank you. Court has any further questions? Thank you very much, your honors. Thank you, counsel. Mr. Bassett, we'll give you two minutes for rebuttal. I'd like to use this opportunity to address a few of these points that were made. One is that the confirmation portion that FINRA would not oppose when expungement is mean that expungement is allowed if there are other reasons for expungement like equitable expungement here. That is a scenario where you would be required to name FINRA and FINRA could oppose at the court confirmation phase. As to the finding of liability by the previous arbitrators, attached are the awards that were made in each of these cases. The awards simply state finding of liability jointly and severably for an amount and damages, all of which were significantly less in value than was what was requested. There is no specific findings as to, for example, Mr. Gaskell is liable for negligence. Mr. Gaskell is liable for unsuitability. None of those findings are present in any of these awards. So to say that it's necessarily a collateral attack because these petitioners are now seeking to expunge based on any one of these arguments is just not within the evidence. If you look at Mr. Wetzel's award, for example, the customers were asking for over $170,000 in damages. Mr. Wetzel, along with the broker-dealer firm, was found liable for $1. Not a single fact said why he was liable, whether it was the broker-dealer or whether it was him specifically. And additionally, you're allowed to allege alternate theories of relief in a statement claim. Just because Mr. or any of these petitioners are seeking expungement under something that the director may consider to be a collateral attack doesn't mean that they're not allowed to seek expungement under alternate theories of relief, such as equitable expungement or any of these other that I've outlined previously. Thank you, counsel. Thank you to both counsel. We'll take this case under submission. Thank you.
judges: Srinivasan, Henderson, Rao